## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JS MARKETING AND COMMUNICATIONS, INC.,**

         Debtor.

Case No. **05-65426-11**

---

**JS MARKETING AND COMMUNICATIONS, INC.,**

         Plaintiff.

-vs-

**QWEST CORPORATION,**

         Defendant,

and

**BLACKFOOT COMMUNICATIONS, INC**,

         Intervenor.

Adv No. **07-00009**

## MEMORANDUM   OF   DECISION

At Butte in said District this 26th day of March, 2007.

On February 22, 2007, Blackfoot Communications, Inc. ("Blackfoot") filed a motion to intervene in this adversary proceeding as a third-party plaintiff, doc. no. 23. Blackfoot attached a proposed third-party complaint to its motion to intervene. Qwest Corporation ("Qwest") filed on March 2, 2007, a response, doc. no. 31, to Blackfoot's motion to intervene and requested a

1

hearing on March 8, 2007.  On March 9, 2007, the Court entered an Order allowing Blackfoot to file a brief in support of its motion to intervene on or before March 19, 2007.  On March 19, 2007, Blackfoot filed its brief in support of its motion to intervene, doc. no. 45.  Debtor is represented by Harold V. Dye, of Missoula, Montana.  Qwest is represented by Dean A. Stensland of Missoula, Montana and Andrew H. Sherman, of Newark, New Jersey.  Blackfoot is represented by Richard J. Samson, of Missoula, Montana.  The Court has reviewed the pleadings and briefs and is ready to issue a decision.  This memorandum contains the Court's findings of fact and conclusions of law.

## FACTS

On November 22, 2006, Debtor filed a motion to establish sale and overbidding procedures and moved to shorten the time allowed for filing responses and requesting a hearing. On December 1, 2006, Debtor filed a motion for sale of property.  A hearing on the motions was scheduled for December 21, 2006.  Prior to December 21, 2006, the Court approved the Debtor's motion to establish sale and overbidding procedures and directed the United States Trustee to appoint a consumer privacy ombudsman.  The United States Trustee's objection to the sale was withdrawn; no other objections or responses to the motion for sale were filed.  The Court conducted the sale of assets on December 21, 2006; Blackfoot was the successful bidder at $750,000.  Debtor and Blackfoot executed an asset purchase agreement on December 21, 2006, which was approved by this Court on December 21, 2006.

After Debtor and Blackfoot executed the asset purchase agreement, issues between Debtor, Qwest and Blackfoot arose as to the completion of the terms of the asset purchase agreement concerning the transfer of Telecommunications Services, including all telephone

2

numbers, DSL lines, and wireless systems owned and/or used by Debtor.  Debtor filed this adversary proceeding and filed a stipulation between Debtor and Blackfoot requesting that this Court approve a partial closing agreement to be effective during the pendency of the unresolved issues with Qwest.  Qwest filed an objection to the partial closing agreement between Debtor and Blackfoot and requested a hearing for March 8, 2007.  Also, at that hearing, the Court conducted a hearing on the motion to intervene in this proceeding.  In the combined hearings considering the approval of the partial closing agreement and the motion to intervene, Exhibits 1, D, E, F, G, H and I were admitted in relation to the approval of the partial closing agreement.  Mark Mesenko, William A. Squires and Michelle Wheeler testified as to the partial closing agreement.  By separate Order, this Court approved the partial closing agreement on March 13, 2007.  By separate Order on March 9, 2007, the Court allowed Blackfoot the opportunity to file a brief in support of its position to intervene.  As noted above all briefing is completed.

DISCUSSION

F.R.B.P. 7024 allows a party to intervene as a matter of right or permissively.  Under F.R.B.P. 7024(a), anyone, upon timely application, shall be permitted to intervene in a proceeding "when a statute of the United States confers an unconditional right to intervene" or "when an applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."  Under F.R.B.P. 7024(b), anyone may, upon timely application, be permitted to intervene when a federal statute confers a conditional right to intervene, or when applicant's claim or defense and the adversary proceeding have a

3

common question of law or fact. Blackfoot has filed a proposed third-party complaint with its motion to intervene.

Qwest argues that Blackfoot is joining with Debtor in this adversary proceeding for the sole purpose of seeking injunctive relief when Blackfoot does not have a separate substantive claim, that Blackfoot is not asserting a separate cause of action, that Blackfoot's motion fails to meet the tests for intervention, that Blackfoot has not asserted a claim or shown an interest that is impacted by this litigation, that Blackfoot has not established a significant protectable interest, that Blackfoot has failed to demonstrate an unrepresented interest, that Blackfoot is seeking intervention for an objective that is already protected by Debtor's representation, that Blackfoot fails to maintain a separate claim or defense from Debtor, and that Blackfoot is merely raising issues that Debtor or Qwest are already litigating.

Blackfoot argues that Qwest is overstating the contingent nature of Blackfoot's interest in the litigation or property, and that Qwest understates Blackfoot's inadequate representation of interest.

Both Qwest and Blackfoot rely, in part, upon *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004). *Alisal* applies the following test in considering whether an applicant, in the case *sub judice,* Blackfoot, has a right of intervention. An applicant must demonstrate that

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. City of Los Angeles* 288 F.3d 391, 397 (9th Cir.2002) (quoting *Donnelly,* 159 F.3d at 409 (internal quotation marks omitted)). The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met. *Id.*

*Alisal*, 370 F.3d at 919.  Qwest has not raised any issue involving whether the motion to intervene is untimely.  The Court concludes that Blackfoot has timely raised its motion to intervene.

Blackfoot must establish that it has a significantly protectable interest relating to the subject matter of the proceeding.  "To trigger a right to intervene, however, an economic interest must be concrete and related to the underlying subject matter of the action." *Alisal, Id.* at 919-20.  The Court concludes based upon the allegations contained in the amended complaint filed by Debtor, the terms of the asset purchase agreement and the partial closing agreement that Blackfoot has an economic interest in this proceeding, which cannot be protected by Debtor as Debtor may hold adverse interests to Blackfoot if the asset purchase agreement and the partial closing agreement unravel as a consequence of Qwest's actions in refusing to transfer to Blackfoot the Telecommunications Services described in the amended complaint.

The Court further concludes in distinction to the result in *Alisal* that Blackfoot's interests will be practically impaired if it is not allowed to intervene as the dispute between Debtor and Qwest directly affects Blackfoot's ability to acquire a portion of the assets acquired through the asset purchase agreement that was approved by this Court.

The Court lastly concludes that Blackfoot's interests are not adequately represented by Debtor, who is a debtor to Qwest and who is a contract seller of assets to Blackfoot.  Although Blackfoot may be able to protect itself by acquiring Telecommunication Services from other sources than Qwest, Blackfoot cannot rely upon Debtor to protects Blackfoot's interest as Debtor may not have the resources to so and could independently refuse to advocate Blackfoot's respective position against Qwest and merely allow the agreements to unravel.

Based upon the foregoing, the Court concludes that Blackfoot has a right to intervene in this adversary proceeding to protect its property interests or interests in the issues arising between Debtor and Qwest, given the asset purchase agreement and partial closing agreement and given the direct negotiations that Blackfoot and Qwest are having concerning the transfer of the Telecommunications Services identified in the amended complaint filed by Debtor.  Given the foregoing analysis, the Court at this time concludes that it is unnecessary to consider Blackfoot's argument for permissive intervention.

For cause, the Court will enter a separate order providing the following:

IT IS ORDERED that Blackfoot's motion to intervene is granted, that Qwest's objection to Blackfoot's motion to intervene is overruled; that Blackfoot shall file on or before April 2, 2007, its third-party complaint or any amended pleading if it concludes that it is unnecessary to file a third-party complaint but rather should intervene as a party plaintiff or defendant with respective claims against any adverse party.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

6